IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID KLEIN,<br><br>        Plaintiff,<br><br>v.<br><br>JELLY BELLY CANDY COMPANY,<br><br>        Defendant. | Civil Action No.<br><br>**NOTICE OF REMOVAL** |

TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**PLEASE TAKE NOTICE** that Defendant Jelly Belly Candy Company ("Jelly Belly" or "Defendant"), pursuant to 28 U.S.C. § 1441, hereby removes this action ("Action") to this Court from the Supreme Court for the State of New York, New York County. Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal will be served upon counsel for Plaintiff David Klein ("Plaintiff") and filed with the Clerk of the New York Supreme Court for the County of New York, as an exhibit to a Notice to State Court of Removal to Federal Court. A copy of the Notice being filed in state court is attached (without exhibits) as Exhibit A.

**TIMELINESS OF REMOVAL**

1. On May 23, 2022, Plaintiff commenced this action by filing a Complaint against Jelly Belly in the Supreme Court of New York, New York County, captioned *Klein v. Jelly Belly Candy Co.*, Index No. 154444/2022. The Complaint appears to allege claims against Jelly Belly for libel and "collusion with civil conspiracy." Compl., at p. 1 of 6.

2. Jelly Belly acknowledged service of the Complaint as of June 3, 2022.

3. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Jelly Belly in this action are attached to this Notice as Exhibit B.

4. The Complaint is the initial pleading setting forth the claims for relief upon which this removal is based. Accordingly, this Notice is timely pursuant to 28 U.S.C. § 1446(b).

5. The Supreme Court of New York, New York County, is located within the Southern District of New York. 28 U.S.C. § 110. This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).

## ALLEGATIONS OF THE COMPLAINT

6. Plaintiff alleges that he is the "original founder of the Jelly Belly Company" and the "original inventor and founder of the Jelly Belly jelly bean," and that Jelly Belly "has published false and defamatory information about Plaintiff in an effort to rewrite the history and origin of the Jelly Belly jelly bean" by "portray[ing] Plaintiff as a fake and not the true inventor and founder of the Jelly Belly jelly beans." Compl., at pp. 1-2 of 6.

7. Plaintiff also alleges that Jelly Belly "conspired with press release companies and other third parties to further portray Plaintiff as not the true founder and inventor of the Jelly Belly jelly bean" and "has attempted to silence Plaintiff and prohibit him from making true statements and representing himself as the original inventor and founder of the Jelly Belly jelly bean in any press release." *Id*. at p. 2 of 6.

8. The Complaint attempts to state claims for libel and "collusion with civil conspiracy" against Jelly Belly. *See id.* at pp. 4-5 of 6.

9. The Complaint seeks, *inter alia*, compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs. *Id*., at pp. 5-6 of 6.

10. Jelly Belly disputes Plaintiff's allegations, denies that the Complaint has merit, and denies that Plaintiff has been harmed in any way.

## BASIS FOR REMOVAL

11. This is a civil action that may be removed to this Court by Jelly Belly under 28

U.S.C. § 1441(b) because this action involves citizens of different states, and the amount in controversy exceeds the sum of $75,000.

**Diversity.**

12. Plaintiff is now, and was at the time this action was commenced, a citizen of the State of Florida within the meaning of 28 U.S.C. § 1332(a) because his place of residence and domicile is and was within the State of Florida.

13. Jelly Belly is now, and was at the time this action was commenced, a corporation duly organized under the laws of the State of California, and its principal place of business is and was in the State of California. Jelly Belly is and was therefore a citizen of the State of California.

14. Accordingly, Plaintiff's and Jelly Belly's citizenship are completely diverse.

**Amount in Controversy.**

15. While Jelly Belly denies liability as to Plaintiff's claims, or that Plaintiff has been damaged, Jelly Belly has a reasonable, good faith belief that the amount in controversy, as alleged and pled in this action by Plaintiff, exceeds Seventy-Five Thousand Dollars ($75,000). In determining whether a complaint meets the amount in controversy threshold of 28 U.S.C. § 1332(a), a court should consider the aggregate value of claims that a plaintiff "might recover." *See, e.g.*, *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 241 (1943). Plaintiff's failure to specify the amount of damages sought does not deprive this Court of jurisdiction. *Id.; see also United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) ("Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record."); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 391 (S.D.N.Y. 2009) ("Defendants may rely on, and courts may consider,

evidence outside of a plaintiff's pleadings to establish the amount in controversy if the pleading is facially inconclusive.") (collecting cases).

16. Plaintiff seeks to recover compensatory and punitive damages, and also seeks injunctive relief. Considered cumulatively, Plaintiff's claims for such relief put more than $75,000 in controversy in this action.

### *Plaintiff's Claim for Compensatory Damages.*

17. Plaintiff alleges that Jelly Belly allegedly made "a direct attack on Plaintiff's reputation which he has spent decades building." Compl., at p. 4 of 6. Plaintiff also alleges that "Defendant has attempted to silence Plaintiff and prohibit him from making true statements and representing himself as the original inventor and founder of the Jelly Belly jelly bean in any press release." *Id*. at pp. 2, 5 of 6.

18. Plaintiff alleges that Jelly Belly's alleged conduct – allegedly injuring his reputation and allegedly preventing him from issuing press releases – "result[ed] in the economic and reputational harm of Plaintiff" and "irreparable damage and loss to Plaintiff," and seeks an award of damages "to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and other benefits of identifying as the creator of Jelly Belly jelly bean." *Id*. at pp. 4-6 of 6.

19. Plaintiff claims that he allegedly lost business opportunities because of his alleged reputational harm. The jelly bean market in the United States is significant, and it exceeds $200 million in sales per year. *See* Certification of Robert Swaigen, submitted herewith as Exhibit C ("Swaigen Cert."), ¶ 3. Given Plaintiff's recent endeavors in that market, it is clear that Plaintiff's claims exceed $75,000 in controversy. For example, Plaintiff sells and/or has attempted to launch various jelly bean products, including coffee jelly beans and CBD (cannabis) infused jelly beans. To prove his claims, Plaintiff must prove that his endeavors failed or could

have performed better but for Jelly Belly's alleged actions. Given the sheer size of the jelly bean market, it is readily apparent that the amount in controversy is satisfied. For example, if the market for Plaintiff's jelly bean products was just $2 million (a mere 1% of the total jelly bean market), the purported "reputational harm" need only have diminished his business by 3.75% in order for the $75,000 amount in controversy to be satisfied.

20. As noted, Jelly Belly denies that Plaintiff suffered any such harm or damages, and will prove at trial that Plaintiff's claims are meritless. But, given the circumstances and based on the allegations in the Complaint, it is clear that the amount in controversy of just Plaintiff's claim for compensatory damages exceeds $75,000.

### *Plaintiff's Claim for Punitive Damages.*

21. Plaintiff also seeks to recover punitive damages. *See* Compl., at p. 6 of 6. Such damages should also be considered in assessing the amount in controversy. *See Bell*, 320 U.S. at 240 ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied.").

### *Plaintiff's Claim for Injunctive Relief.*

22. In addition to compensatory and punitive damages, Plaintiff also seeks declaratory and injunctive relief. *See* Compl., at p. 5 of 6. In assessing the amount in controversy, the Court should consider the value of that relief to Plaintiff. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (where injunctive relief is sought, "the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes

5

the amount in controversy when damages are not requested."); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, 515 F. Supp. 3d 95, 101 (S.D.N.Y. 2021) (value of injunctive relief is "measured from the plaintiff's perspective and is the monetary value of the benefit that would flow to the plaintiff if . . . declaratory relief were granted.").

23.  Plaintiff seeks "[a]n injunction and order permanently restraining Defendant from prohibiting the publication of Plaintiff as the founder and creator of the Jelly Belly jelly bean." Compl., at p. 5 of 6. The value of that relief to Plaintiff likewise exceeds $75,000 in an amount in controversy.

24.  The value to Plaintiff of the requested injunction is amply illustrated by two recent instances where Plaintiff promoted a product in a way that would be permitted if the injunction was ordered (by allowing him to misrepresent his connection to Jelly Belly).

25.  The first instance illustrating the value of the Plaintiff's proposed injunction relates to a line of CBD (cannabis) infused jelly beans Plaintiff launched in 2019. As part of the CBD jelly bean launch, Plaintiff promoted the product by associating himself with Jelly Belly, which resulted in extensive media coverage – i.e., free advertising – expressly driven by his purported connection to Jelly Belly. In a January 24, 2022 podcast interview, Plaintiff acknowledged that this product "went viral" because he associated it with Jelly Belly. *See* https://www.audible.com/pd/Love-Jelly-Beans-Listen-to-The-Inventor-of-Jelly-Belly-Beans-David-Klein-Tell-About-His-Journey-Podcast/B09R2PFK8F. For example, on March 19, 2019, Vice published an article with the headline "The Founder of Jelly Belly Is Developing CBD Jelly Beans Now (https://www.vice.com/en/article/nexy5w/the-founder-of-jelly-belly-is-developing-cbd-jelly-beans-now) – an article that was viewed by approximately 500,000 people. A second instance illustrating the value of the Plaintiff's proposed injunction arose again one year later. In 2020, Plaintiff sold entries to a "Gold Ticket" contest, where the grand prize was a candy

factory. Plaintiff promoted the contest by misrepresenting that he was the founder of the Jelly Belly Candy Company, which caused significant consumer confusion that Jelly Belly was involved in the contest and that the subject prize was a Jelly Belly factory. Plaintiff's scheme to falsely associate himself with Jelly Belly to market his "Gold Ticket" contest paid off, and resulted in extensive media coverage – i.e., free advertising – expressly driven by his purported connection to Jelly Belly. For example, NPR published an article on September 9, 2020 with the headline "Jelly Belly Founder David Klein Offers Candy Factory As A Prize" (*see* https://www.npr.org/2020/09/09/911006011/jelly-belly-founder-david-klein-offers-candy-factory-as-a-prize), an article viewed by approximately 1 million people. Had Plaintiff paid for advertising to even approach the reach and impact of these two articles in connection with either the CBD jelly bean or the "Gold Ticket" contest, it would have exceeded $75,000. *See* Swaigen Cert. (Ex. C hereto), ¶¶ 4-6.

26. Thus, Plaintiff has marketed himself in a way that his proposed injunction would allow, and has realized hundreds of thousands of dollars in free media. Accordingly, if the injunction is ordered, the value to Plaintiff would far exceed $75,000.[1]

27. The value of the injunction to Plaintiff is also evidenced by Plaintiff's other conduct. In addition to the Gold Ticket contest, Plaintiff has similarly attempted to capitalize on the Jelly Belly® name and brand, his purported involvement the invention of the Jelly Belly® jelly bean, and his purported involvement in the Jelly Belly Candy Company to promote various candy products. For example, the "About Us" sections of his candy companies' websites focus exclusively on the Jelly Belly jelly bean, not his actual products. *See* https://candymankitchens.com/about-us/; https://www.spectrumconfections.com/. Plaintiff has

---

[1] Jelly Belly reserves its rights to recover any damages to its reputation and goodwill from the intended inference.

also sought to garner attention for himself by using the Jelly Belly name in other endeavors unrelated to the candy industry products, for example, in connection with the marketing of his book and in his search for a literary agent, and even in a social media effort to raise a legal fund to sue Jelly Belly. *See* https://twitter.com/wwwcandyinvento/status/1484791733028372480?cxt=HHwWgIC-ydyNhZspAAAA, https://twitter.com/wwwcandyinvento/status/1042095020256489473?cxt=HHwWgsC7icr5ofYcAAAA, https://www.gofundme.com/f/candyinventor, and https://web.archive.org/web/20181213011140/https://www.gofundme.com/candyinventor.  Thus, Plaintiff believes that the injunction he seeks is valuable to him in his candy businesses and in contexts beyond candy sales and marketing.

28. The value of Plaintiff's ability to draft off Jelly Belly to create value for himself is also supported by the value of the Jelly Belly® name itself.  Jelly Belly® products enjoy significant goodwill internationally, which the company has developed and maintained through more than forty years of hard work, research and development, investment, and marketing. Indeed, Plaintiff stated in a January 24, 2022 podcast interview that the Jelly Belly® brand has a 92% name recognition in the United States.  *See* https://www.audible.com/pd/Love-Jelly-Beans-Listen-to-The-Inventor-of-Jelly-Belly-Beans-David-Klein-Tell-About-His-Journey-Podcast/B09R2PFK8F.  Internal studies commissioned by Jelly Belly reflect slightly lower, but still significant and important, name recognition.  Other studies show that the Jelly Belly® name results in significant increases in sales compared to comparable products that are not associated with the brand.

29. That goodwill, resulting from the Jelly Belly® name and the Jelly Belly Candy Company's rich history as a candy manufacturer (which history pre-dates Plaintiff's sale of the trademark by more than 100 years), is extremely valuable.  For example, Jelly Belly paid $4.8

million to Plaintiff and his partner in 1980 to purchase the trademark (adjusted for inflation, $4.8 million would be more than $17 million today).  *See* Compl., at p. 1 of 6.  Based in large part on its goodwill, Jelly Belly's annual revenues exceed $190 million.

30.   If Defendant is enjoined from appropriately protecting those assets and Plaintiff is permitted to monetize the Jelly Belly® name by holding himself out as the founder of Jelly Belly and the inventor of the Jelly Belly jelly bean, the value of such an injunction to Plaintiff will far exceed $75,000.  Even if the value of being able to leverage Jelly Belly's goodwill to Plaintiff is a small fraction of the total value of the goodwill to Jelly Belly itself, it would exceed the amount in controversy threshold.

31.   Given the foregoing, between Plaintiff's claims for money damages and punitive damages, and the value of Plaintiff's claim for injunctive relief, it is more likely than not that Plaintiff "might recover" more than $75,000.

32.   Because diversity of citizenship exists between the Plaintiff and Defendant, and the amount in controversy between them is in excess of $75,000, this Court has original jurisdiction of the action under 28 U.S.C. § 1332(a)(1), and removal is proper.

**No Joinder Necessary.**

33.   No other defendants have been identified by Plaintiff and no other defendants are required to consent to removal.

## RESERVATION OF RIGHTS AND DEFENSES

34.   By filing this Notice of Removal, Jelly Belly does not waive any defenses that may be available to it and reserve all such defenses.  Jelly Belly does not concede that Plaintiff states any claim upon which relief can be granted, that Plaintiff's claims are timely, or that Plaintiff is entitled to any relief of any nature.  Nonetheless, Plaintiff's claims, as pleaded in the Complaint

at the time of removal, "whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 202 U.S. 283, 294 (1938).

35. If any challenges to the propriety of the removal of this action arise, Jelly Belly respectfully requests the opportunity to present oral argument and/or additional evidence.

WHEREFORE, Jelly Belly hereby removes this Action to this Court from the Supreme Court of New York, New York County.

Date: July 1, 2022

>*/s/Eric D. Wong*
>Eric D. Wong
>GREENBERG TRAURIG, LLP
>One Vanderbilt Avenue
>New York, NY 10017
>(973) 360-7900
>(973) 301-8410 (fax)
>
>and
>
>Kurt Kappes (*pro hac vice* application forthcoming)
>GREENBERG TRAURIG, LLP
>1201 K Street
>Suite 1100
>Sacramento, CA 95814
>(916) 442-1111
>(916) 448-1709 (fax)
>
>*Attorneys for Defendant*
>*Jelly Belly Candy Company*